## CIVIL ACTION NO. 4:25-CV-00807

---

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

## GE Steam Power Inc. *et al.*

---

Appeal from the
*Order Sustaining Talen's Twelfth Omnibus Objection to Certain Claims Filed by GE Electric,* entered on February 4, 2025, by the United States Bankruptcy Court for the Southern District of Texas (Houston Division) in *In re Talen Energy Corporation, et al*. (Bankr. Case No. 22-90339) (jointly administered)

---

## BRIEF OF APPELLANTS, GE STEAM POWER INC. AND GENERAL ELECTRIC INTERNATIONAL, INC.

Paul D. Moak, Esquire
(Texas Bar No. 00794316)
REED SMITH LLP
1221 McKinney Street
Suite 2100
Houston, TX 77010
Telephone: (713) 469-3800
E-mail: pmoak@reedsmith.com

*Counsel for Appellants,*
*GE Steam Power Inc., and*
*General Electric International, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a), appellant GE Steam Power Inc. states that is a wholly-owned subsidiary of GE Steam Power Holding Inc. (a Delaware corporation), which in turn is a direct wholly-owned subsidiary of GE Vernova, Inc., which is publicly-traded on the New York Stock Exchange under the ticker symbol "GEV."

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a), appellant General Electric International, Inc. states that it is now known as GE Vernova International LLC and is a wholly-owned subsidiary of GE Vernova International Holdings, Inc. (a Delaware corporation), which in turn is a direct wholly-owned subsidiary of GE Vernova, Inc., which is publicly-traded on the New York Stock Exchange under the ticker symbol "GEV."

## TABLE OF CONTENTS

**Page**

I.  JURISDICTIONAL STATEMENT ................................................................1

II.  ISSUES PRESENTED AND STANDARD OF REVIEW..............................1

III.  STATEMENT OF THE CASE ....................................................................3

IV.  SUMMARY OF ARGUMENT....................................................................7

V.  ARGUMENT...............................................................................................8

   A.  Appellants' Liens under Article XVI of the Texas Constitution ..................8

   B.  The Debtors Cannot Avoid Appellants' Liens under the Second Clause of Section 544(a)(3). ..............................................................................................9

   C.  The First Clause of Section 544(a) Does Not Give the Debtors a Second Bite at the Apple to Effectively Avoid the Liens. ................................................11

   D.  The Debtors' Attempt to Reclassify the Secured Claims under Section 502(b)(1) of the Bankruptcy Code Also Fails as a Matter of Law.......................19

   E.  The Bankruptcy Court's Policy Concerns Miss the Mark. .........................21

VI.  CONCLUSION .......................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of N.Y. v. Sheeley (In re Sheeley)*,
[2012 Bankr. LEXIS 1374,] 2012 WL 8969064 (Bankr. S.D. Ohio
Apr. 2, 2012) ........................................................................................................17

*Bank of N.Y. v. Sheeley (In re Sheeley)*,
2013 Bankr. LEXIS 929 (Bankr. S.D. Ohio Mar. 4, 2013), *aff'd,*
*Bank of N.Y. v. Sheeley*, 2014 U.S. Dist. LEXIS 42748 (S.D. Ohio,
Mar. 25, 2014) ................................................................................................16, 17

*Begier v. IRS*,
496 U.S. 53 (1990) ...............................................................................................21

*Berkley v. West (In re West)*,
474 B.R. 191 (Bankr. N.D. Miss. 2012) .........................................................14, 22

*Brick & Tile, Inc. v. Parker*,
143 Tex. 383 (1945) ................................................................................................8

*C&B Sales & Serv. Inc. v. McDonald*,
177 F.3d 384 (5th Cir. 1999) .................................................................................19

*Campbell v. U.S. (In re Davis)*,
889 F.2d 658 (5th Cir. 1989) .................................................................................22

*Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*,
864 F.3d 344 (5th Cir. 2017) ..............................................................................2, 3

*Crawford Servs. v. Skillman Int'l Firm, L.L.C.*,
444 S.W.3d 265 (Tex. App. 2014)...........................................................................8

*Donovan v. Maresca (In re Maresca)*,
982 F.3d 859 (2d Cir. 2020) ..................................................................................11

*In re Elam*,
194 B.R. 412 (Bankr. E.D. Tex. 1996) ....................................................................4

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008).........................................................................19

*GMAC Mortg. LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.)*,
  2008 Bankr. LEXIS 4353 (Bankr. S.D. Tex. Oct. 2, 2008) ..............................22

*Matter of Goodrich Petroleum Corp.*,
  894 F.3d 192 (5th Cir. 2018) ...............................................................9

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt.,*
  *L.P. (In re Highland Cap. Mgmt., L.P.)*,
  132 F.4th 353 (5th Cir. 2025) ..........................................................2, 3

*In re Jack Kline Co., Inc.*,
  440 B.R. 712 (Bankr. S.D. Tex. 2010) ......................................................4

*Lee v. Bank One, N.A. (In re Lee)*,
  249 B.R. 864 (Bankr. N.D. Ohio 2000)......................................................21

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004)..........................................................................11

*Loughrin v. U.S.*,
  573 U.S. 351 (2014)........................................................................12

*Miller v. New Penn Fin., LLC (In re Miller)*,
  2020 Bankr. LEXIS 1084 (Bankr. N.D. Ga. Apr. 21, 2020).................................15, 16

*NCC Fin. L.L.C. v. Investar Bank, N.A. (In re W Res., L.L.C.)*,
  2022 U.S. App. LEXIS 10140 (5th Cir. Apr. 14, 2022)....................................17, 18

*In re Odom Antennas, Inc.*,
  340 F.3d 705 (8th Cir. 2003)...............................................................22

*Olson v. Aegis Mortg. Corp. (In re Bloxsom)*,
  389 B.R. 52 (Bankr W.D. Mich. 2008) .......................................................15

*Ransom v. FIA Card Servs., N.A.*,
  562 U.S. 61 (2011).........................................................................11

*In re Rent A Tent, Inc.*,
  468 B.R. 442 (Bankr. N.D. Ga. 2012)....................................................14, 15

*Singleton v. Wulff*,
　428 U.S. 106 (1976).................................................................................19

*Sommers v. Aguirre (In re Santoyo)*,
　540 B.R. 284 (Bankr. S.D. Tex. 2015) ..........................................*passim*

*Southern Bank & Trust Co. v. Alexander (In re Alexander)*,
　2014 Bankr. LEXIS 3048 (E.D. Va. July 16, 2014), *aff'd*, 524 B.R.
　82 (E.D. Va. 2014)..............................................................................15, 16

*Stuart v. City of Scottsdale (In re Stuart)*,
　2021 Bankr. LEXIS 981 (9th Cir BAP Apr. 12, 2021)......................................20

*In re Today's Destiny, Inc.*,
　2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. Nov. 26, 2008) (Isgur,
　J.).......................................................................................................20

*U.S. v. Miller*,
　145 S. Ct. 839 (2025)........................................................................13, 16

**Statutes**

11 U.S.C. § 502(b) .........................................................................20, 21

11 U.S.C. § 502(d) .........................................................................21, 22

11 U.S.C. § 544(a) ...........................................................................*passim*

11 U.S.C. § 544(a)(3)........................................................................*passim*

11 U.S.C. § 546(a) ...........................................................................*passim*

11 U.S.C. § 546(a)(1)(A) .........................................................................10

11 U.S.C. § 546(a)(2)...............................................................................5

11 U.S.C. § 546(a)(2)..............................................................................10

11 U.S.C. § 1107 ....................................................................................9

28 U.S.C. § 157(b)(2)(B) ...........................................................................1

28 U.S.C. § 158(a)(1)................................................................................1

28 U.S.C. § 1334(b) ..................................................................................................1

**Rules**

Fed. R. Bankr. P. 8002(a)(1)......................................................................................1

**Other Authorities**

BLACK'S LAW DICTIONARY (12th ed. 2024)..............................................................13

House Rpt. 95-595, 95th Cong. 1st Sess. 352 (1977)................................................21

4 Lawrence P. King, et al., COLLIER ON BANKRUPTCY ¶ 502.05[3]
    (15th ed. rev. 2003)..............................................................................................22

Senate Report No. 95-989, 95th Cong., 2d Sess. 62 (1978)......................................21

Tex. Const. Article XVI, § 37......................................................................................8

51 TEX. JUR. MECHANIC'S LIENS § 45(3).....................................................................8

## I.    JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") had subject matter jurisdiction of the Objection to the Secured Claims (as those terms are defined below) pursuant to 28 U.S.C. § 1334(b). The Objection was a "core" proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

The United States District Court for the Southern District of Texas has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) because the Order (as defined below) is a final order (appealable as of right).

Appellants' appeal was timely because the Order was entered on February 4, 2025, and the *Notice of Appeal* was filed on February 18, 2025. *See* Bankr. Dkt. Nos. 514 & 529 [App. 014-15; App. 327-28].[1] *See* Fed. R. Bankr. P. 8002(a)(1) (notice of appeal must be filed within 14 days after entry of the Order being appealed).

## II.    ISSUES PRESENTED AND STANDARD OF REVIEW

This appeal involves the following main issues:

(a)    Whether the Bankruptcy Court erred by enabling the Debtor to employ their bona fide purchaser ("BFP") status under the First Clause (as defined below) of section 544(a)(3) of the Bankruptcy Code to effectively avoid or set aside the

---

[1] Except as otherwise provided in this Brief, references to "Bankr. Dkt. No. _____" are to the docket number of the lead jointly-administered case of Talen Energy Corporation (Case No. 22-90339).  References to "App. _____" are to the page numbers in the Appendix filed contemporaneously with this Brief.

Liens (as defined below), which were (i) enforceable against the Debtors and their property on the Petition Date (as defined below) and (ii) unavoidable because the Debtors did not use their BFP power to avoid the Liens prior to the expiration of the deadline in section 546(a) of the Bankruptcy Code for the Debtors to use their BFP power to avoid the Liens.

The standard of appellate review for that legal issue is de novo. *See Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 132 F.4th 353, 357 (5th Cir. 2025) (a bankruptcy court's "legal conclusions" are reviewed de novo); *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

(b)    Whether the Debtors' BFP status under the First Clause of section 544(a)(3) of the Bankruptcy Code can be used as a "back door" to avoid or nullify the Liens even though the deadline to avoid the Liens under section 546(a) of the Bankruptcy Code has long since expired.

The standard of appellate review for that legal issue is de novo. *See Highland Cap.*, 132 F.4th at 357; *Cowin*, 864 F.3d at 349.

(c)    Whether the Debtors can disallow or reclassify the Secured Claims (as defined below) under section 502(b)(1) of the Bankruptcy Code where the Secured Claims were enforceable against both the Debtors and their property on the Petition

- 2 -

Date. The standard of appellate review for that legal issue is de novo. *See Highland Cap.*, 132 F.4th at 357; *Cowin*, 864 F.3d at 349.

## III.    STATEMENT OF THE CASE

On May 10, 2022 (the "Petition Date"), each of Barney Davis, LLC and Nueces Bay, LLC (together, the "Debtors") filed a voluntary chapter 11 petition. *See* Barney Davis, LLC Voluntary Petition (Case #22-90090) [App. 016]; Nueces Bay, LLC Voluntary Petition (Case #22-90092) [App. 092].

GE Steam Power Inc. ("GE Steam") and General Electric International, Inc. ("GEII" and together with GE Steam, "Appellants") filed the following secured proofs of claim (the "Secured Claims") [App. 168-191] against the Debtors in the aggregate amount of $758,756.42 (which excludes $42,676.59 in claims under section 503(b)(9) of the Bankruptcy Code that the parties resolved):[2]

| Debtor | Proof of Claim Register No. | Claimant | Secured Claim Amount | Appendix Pages |
|---|---|---|---|---|
| Nueces Bay, LLC | 37563 | GEII | $383,785.18 | App. 176-183 |
| Barney Davis, LLC | 37564 | GEII | $294,287.70 | App. 184-191 |
| Barney Davis, LLC | 2911 | GE Steam | $80,683.54 | App. 168-175 |

---

[2] The Debtors and Appellants consensually resolved all of Appellants' claims other than the Secured Claims. *See* Mem. Op, p. 1 [App. 319].

The Secured Claims were *prima facie* evidence of the validity and the amount of the claims under section 502(a) of the Bankruptcy Code. *See, e.g.*, *In re Jack Kline Co., Inc.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010).

On July 8, 2024, the Debtors filed the *Reorganized Debtor's Twelfth Omnibus Objection to Certain Claims filed by GE Electric (Reclassified Claims, Reclassified and Reduced Claims, Reduced Claims, and Satisfied Claims)* [App. 192]; Bankr. Dkt. 375] (the "Objection"). In the Objection, the Debtors asserted the following grounds as the basis for objecting to the Secured Claims. "Pursuant to section 544 of the Bankruptcy Code, specifically related to a debtor's strong-arm powers under section 544, the GE Entity's asserted prepetition constitutional liens are not enforceable against Reorganized Talen" and, therefore, the Secured Claims should be "reclassified as general unsecured claims." Objection ¶ 4. The Debtors reasoned that they were "entitled to set aside liens that were not properly recorded under Texas law pursuant to section 544(a)." Objection ¶ 21 (citing *Sommers v. Aguirre (In re Santoyo)*, 540 B.R. 284, 289-90 (Bankr. S.D. Tex. 2015) (discussing debtor's power to "avoid" liens unenforceable against a BFP under 11 U.S.C. § 544(a)(3)) and *In re Elam*, 194 B.R. 412, 416 (Bankr. E.D. Tex. 1996) (discussing same)).

On September 24, 2024, Appellants filed the *Response of the GE Entities to the Reorganized Debtor's Twelfth Omnibus Objection to Certain Claims Filed by*

*GE Electric (Reclassified Claims, Reclassified and Reduced Claims, Reduced Claims, and Satisfied Claims)* [App. 240; Bankr. Dkt. No. 433] (the "Response"). Appellants argued that the Debtors could not avoid Appellants' constitutional liens (the "Liens") because the Debtors were time barred from avoiding the liens under 11 U.S.C. 546(a)(2). *See* Response, ¶¶ 11-16 [App. 244-45]. The Appellants also asserted that the Debtors could not use a time-barred avoidance action to disallow the Secured Claims or related Liens. *See* Response, ¶¶ 17-21 [App. 245-46].

On October 28, 2024, the Debtor filed the *Reorganized Debtor's Reply in Support of Reorganized Debtor's Twelfth Omnibus Objection to Certain Claims Filed by GE Electric (Reclassified Claims, Reclassified and Reduced Claims, Reduced Claims, and Satisfied Claims)* [App. 256; Bankr. Dkt. No. 452] (the "Reply"). In the Reply, the Debtors (implicitly recognizing that they could not avoid the Liens) asserted that they did "not seek to 'avoid' any lien . . . . Rather, the Reorganized Debtors are simply asserting their rights and defenses as a BFP to object to [Appellants'] alleged secured claims on the basis that the underlying, unrecorded constitutional liens are not enforceable against the Reorganized Debtors under Texas law." *See* Reply, ¶ 2 [App. 257].

On October 30, 2024, the Bankruptcy Court held a hearing (the "Hearing") on the Objection to the Secured Claims. [App. 011; Bankr. Dkt. No. 455]. At the outset of the Hearing, the Bankruptcy Court declared that the dispute involved a

"troubling, difficult question." *See* Transcript of October 30, 2024 Hearing [Bankr. Dkt. No. 472] (the "10/30/24 Hrg. Tr."), at 6:12-13 [App. 274]. At the conclusion of the Hearing, the Bankruptcy Court ordered Appellants and the Debtors to file supplemental briefing on whether, under Texas law, the Liens are enforceable against a BFP. *See* 10/30/24 Hrg. Tr. at 32:18-24 [App. 300].

On December 6, 2024, the Debtors filed the *Reorganized Debtor's Supplemental Brief in Support of Reorganized Debtor's Twelfth Omnibus Objection to Certain Claims filed by GE Electric (Reclassified Claims, Reclassified and Reduced Claims, Reduced Claims, and Satisfied Claims)* [App. 305; Bankr. Dkt. No. 481], and Appellants filed the *Post-Hearing Brief of the GE Entities in Opposition to the Reorganized Debtor's Twelfth Omnibus Objection to Certain Claims filed by GE Electric (Reclassified Claims, Reclassified and Reduced Claims, Reduced Claims, and Satisfied Claims)* [App. 311; Bankr. Dkt. No. 482].

On February 4, 2025, the Bankruptcy Court issued its *Memorandum Opinion* [App. 319; Bankr. Dkt. No. 513], and an accompanying *Order Sustaining Talen's Twelfth Omnibus Objection to Certain Claims Filed by GE Electric* [App. 327; Bankr. Dkt. No. 514] (the "Order"). On February 18, 2025, Appellants timely filed their *Joint Notice of Appeal and Statement of Election* [App. 328; Bankr. Dkt. No. 529].

## IV.    SUMMARY OF ARGUMENT

Appellants have valid, enforceable Liens against the Debtors under Article XVI of the Texas Constitution. Neither Debtor exercised its section 544(a) strong-arm powers as a BFP of real property to file a proceeding to "avoid" the Liens. Under section 546(a) of the Bankruptcy Code, the deadline for filing a proceeding to avoid the Liens passed on July 28, 2023.

Almost a year after the July 28, 2023 deadline, the Debtors sought to assert their BFP status to effectively avoid, nullify, set aside and render ineffective the Liens. The Debtors cannot use their BFP status to effectively avoid the Liens. The Debtors can only use their BFP status to prevent a creditor (unlike Appellants) that had no valid lien on the Petition Date from taking post-petition action to *create* a lien.

In addition, the Debtors cannot disallow the Secured Claims under section 502(b)(1) of the Bankruptcy Code because the Secured Claims were *not* unenforceable against the Debtors and their property on the Petition Date. To the contrary, the Secured Claims were enforceable against both the Debtors and their property on the Petition Date.

For those reasons, the Bankruptcy Court erred as a matter of law by disallowing the Secured Claims and reclassifying them as unsecured claims. The Court should (i) reverse the Order and instruct the Bankruptcy Court (on

remand) to enter judgment in Appellants' favor allowing the Secured Claims in the aggregate amount of $758,756.42 and (ii) grant such further relief to Appellants as is appropriate.

## V.   ARGUMENT

### A.   Appellants' Liens under Article XVI of the Texas Constitution

"The Texas constitution grants a lien to a contractor or supplier who contracts directly with a real property owner to provide labor or materials for improvements to the property. Tex. Const. Art. XVI, § 37 ('Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor . . . .').'' *Crawford Servs. v. Skillman Int'l Firm, L.L.C.*, 444 S.W.3d 265, 267 (Tex. App. 2014). It is hornbook law that "[a]n original contractor making improvements on property pursuant to a contract with the owner has a constitutional lien under the Texas Constitution and is *not required* to file an affidavit with the county clerk to be entitled to the relief and remedy granted by way of foreclosure of his or her constitutional lien on the property." 51 TEX. JUR. MECHANIC'S LIENS § 45(3) (emphasis added) (citing *Brick & Tile, Inc. v. Parker*, 143 Tex. 383, 385 (1945)).

Appellants did not file a lien affidavit. Appellants were not required to do so to have valid, enforceable liens against the Debtors. *See Sommers v. Aguirre (In re Santoyo)*, 540 B.R. 284, 290 (Bankr. S.D. Tex. 2015) (Isgur, J.) ("A constitutional mechanic's lien is self-executing as between the owner and the original contractor

- 8 -

regardless of notice or statutory requisites. As the original contractor, Aguirre could enforce his lien against the Santoyos regardless of whether he filed a lien affidavit.").

**B.      The Debtors Cannot Avoid Appellants' Liens under the Second Clause of Section 544(a)(3).**

Section 544(a) of the Bankruptcy Code provides, in part, that:

> The trustee shall have, as of the commencement of the case, . . ., *the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property* . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added); *see also* 11 U.S.C. § 1107 ("a debtor in possession shall have all the rights . . . and powers . . . of a trustee").

Section 544(a)(3) "creates a legal fiction affording a debtor-in-possession the abilities it would have as a bona fide purchaser of the debtor's interests . . . at the time the bankruptcy is filed." *Matter of Goodrich Petroleum Corp.*, 894 F.3d 192, 197–98 (5th Cir. 2018) (citation omitted). Section 544(a)(3) can be broken down into two clauses that grant such abilities to a debtor. The "**First Clause**" provides that "[t]he trustee shall have, as of the commencement of the case, . . ., the rights and powers of . . . a bona fide purchaser." The "**Second Clause**" provides that "[t]he trustee . . . may avoid any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser of real property."

- 9 -

The Second Clause enables a debtor to avoid liens on real property that are enforceable against a debtor, but are avoidable by a BFP. A Texas constitutional lien is enforceable against a debtor. *See Santoyo*, 540 B.R. at 290. Absent the filing of a lien affidavit, however, a Texas constitutional lien is not enforceable against a BFP. *See id.* at 289 ("Section 544 allows the avoidance of a transfer of real property that is not perfected and accordingly not enforceable against a bona fide purchaser at the time the bankruptcy petition is filed."); *see also id.* at 290-91.

The Bankruptcy Code establishes a deadline to "avoid" a lien under section 544(a)(3). Pursuant to section 546(a) of the Bankruptcy Code, the Debtors had until July 28, 2023 to file a proceeding to avoid the Liens.[3] If the Debtor had timely filed such proceeding and prevailed on the merits thereof, the Liens would be "avoided," thereby rendering the Liens to be ineffective.

---

[3] The deadline for filing an adversary proceeding to avoid a lien under section 544(a)(3) is the earlier of (1) two years after entry of the order for relief (*i.e.,* the petition date) or (2) the time a bankruptcy case is closed or dismissed. *See* 11 U.S.C. § 546(a)(1)(A), (a)(2). On July 28, 2023, the Bankruptcy Court entered a final decree closing the Debtors' chapter 11 cases. *See* Objection, ¶ 13 [App. 200]. Accordingly, the deadline to avoid the Liens expired on July 28, 2023 under section 546(a)(2) of the Bankruptcy Code. The Objection was filed on July 8, 2024, almost a year after expiration of the July 28, 2023 deadline to avoid the Liens. [App. 007 & 192]. Even if the Debtors' cases were not closed, the Debtors would have missed the deadline as the two-year anniversary of the Petition Date was May 10, 2024.

The Debtors, however, did not file any action under the Second Clause to avoid the Liens. As the Debtor failed to bring an avoidance action prior to the deadline, the Liens are unavoidable. *See* 11 U.S.C. § 546(a).

**C.    The First Clause of Section 544(a) Does Not Give the Debtors a Second Bite at the Apple to Effectively Avoid the Liens.**

Unable to "avoid" the Liens under the Second Clause of section 544(a)(3), the Debtors argue that they nevertheless can render those Liens ineffective because the Debtors have BFP status as of the commencement of the case under the First Clause of section 544(a)(3). *See* 11 U.S.C. § 544(a) ("The *trustee shall have, as of the commencement of the case, . . ., the rights and powers of*, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property . . .") (emphasis added).

The Debtors' interpretation of their BFP status under the First Clause fails for several reasons.

***First***, the Supreme Court has directed that "'[w]e must give effect to every word of a statute wherever possible'" when interpreting the Bankruptcy Code. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70 (2011) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004)); *Donovan v. Maresca (In re Maresca)*, 982 F.3d 859, 863 (2d Cir. 2020) (refusing to adopt an interpretation of the Bankruptcy Code that would read a phrase out of the Code, "a result contrary to 'the cardinal principle

- 11 -

of interpretation that courts must give effect, if possible, to every clause and word of a statute'") (quoting *Loughrin v. U.S.*, 573 U.S. 351, 358 (2014)).

The Debtors' interpretation of the First Clause gives no effect to the Second Clause. In other words, a debtor would not need to exercise its BFP avoidance powers under the Second Clause because the debtor could simply ignore the section 546(a) deadline for avoiding the lien and then object (years later) to the creditor's secured claim and seek to reclassify it as an unsecured creditor. The end result of the Debtors' interpretation (which the Bankruptcy Court adopted) is that the Second Clause (as well as the deadline set forth in section 546(a)) are given *no effect*: Under their interpretation of the First Clause, the Debtors can obtain relief under the First Clause that is barred by the Second Clause and the deadline imposed by Section 546(a).

Neither the Debtors nor the Bankruptcy Court address the substantive problem with their interpretation of the First Clause. Instead, in a conclusory manner, they simply assert that the Debtors were not trying to "avoid" the Liens. *See* Mem. Op., p. 4 ("Talen is not seeking to avoid the unperfected constitutional liens") [App. 322]; Reply, ¶ 2 ("pursuant to the Claim Objection, the Reorganized Debtors do not seek to 'avoid' any lien or real property transfer") [App. 257]. In reality, however, "avoiding" the Liens is *exactly* what the Debtors sought to do by objecting to the Secured Claims to reclassify them as unsecured claims. *See* 10/30/24 Hrg. Tr. at

- 12 -

10:15-17 (THE COURT: "Well, you're not seeking to disallow the claim. You're

seeking to *avoid* the secured status of the claim.") (emphasis added) [App. 278].

While disclaiming any attempt to "avoid" the Liens, the Debtors concede that

they seek to "set aside" the Liens. *See* Objection, ¶ 21 ("[T]he Reorganized Debtor

. . . is entitled to *set aside* liens that were not properly recorded under Texas law

pursuant to section 544(a).") (emphasis added) [App. 202]. "Avoiding" and "setting

aside" are synonymous.  Interpreting section 544 of the Bankruptcy Code, the United

States Supreme Court has recognized that "setting aside" a lien is the same thing as

"avoiding" a lien. *See U.S. v. Miller*, 145 S. Ct. 839, 846 (2025) ("The Bankruptcy

Code empowers a bankruptcy trustee to **set aside, or 'avoid,'** certain transfers . . . .")

(emphasis added).

Moreover, the term "avoid" means "to render void." BLACK'S LAW

DICTIONARY (12th ed. 2024). "Void" means "[t]o render of no validity or effect; to

annul; nullify." BLACK'S LAW DICTIONARY (12th ed. 2024). By objecting to the

Secured Claims and seeking to render them unsecured, the Debtors indisputably

sought to "nullify" the Liens by rendering them "of no validity or effect." Thus, by

the plain meaning of the word "avoid," *the Debtors sought to avoid (i.e., set aside,

nullify, or render invalid and ineffective) the Liens under the First Clause* even

though the Debtors are time-barred from avoiding the Liens under the Second

Clause, which governs "avoid[ance]" of liens.

- 13 -

***Second***, the Debtors' attempt to use the First Clause to effectively avoid the Liens is inconsistent with the fact that avoidance is *not* self-effectuating. *See, e.g., Berkley v. West (In re West)*, 474 B.R. 191, 204-05 (Bankr. N.D. Miss. 2012). The Debtors' use of the First Clause to nullify the Liens is a self-effectuating avoidance of the Liens—*i.e.,* it would render the Liens unenforceable without the Debtors' timely filing of a proceeding to avoid the liens under the Second Clause and section 546(a) of the Bankruptcy Code.

***Third****,* section 544(a) can (and should) be interpreted so as to give full effect to each of the First Clause and the Second Clause. The BFP status conferred on the Debtors by the First Clause does not provide the Debtors with a "back door" to lien avoidance covered by the Second Clause. Instead, the First Clause enables a debtor to prevent a creditor from taking *post-petition* action to *create* a lien against the debtor's property where no such lien existed on the petition date.

For example, in the *In re Rent A Tent, Inc.,* 468 B.R. 442, 456 (Bankr. N.D. Ga. 2012), the court found that a trustee (or debtor in possession) could raise its BFP status as a defense to a creditor's post-petition attempt to reform a deed that was unenforceable against the debtor as of the petition date. The court concluded that, even if the plaintiff was entitled to reformation under Georgia law, the debtor was entitled to asserts its rights under the First Clause to prevent post-petition reformation that would *create* a lien that did not exist on the petition date. *Id.* at 455-

- 14 -

56 (noting that a suit for reformation does not result in a lien until the court grants reformation). The Court specifically held that, "*[s]ince there is no lien to avoid*, the statute of limitations preventing the Trustee from doing so is inapplicable." *Id.* (emphasis added); *see* Mem. Op., p. 5 ("To be sure, there was no lien to avoid in that case [*Rent A Tent*], so the limitations period of the avoidance provision was irrelevant.") [App. 323].

Olson v. Aegis Mortg. Corp. (In re Bloxsom), 389 B.R. 52 (Bankr W.D. Mich. 2008), also demonstrates that the First Clause gives the Debtors defensive rights of a BFP as of the commencement of the case to avoid a creditor's post-petition attempt to create a lien, but does not enable the Debtors to effectively avoid a lien against the Debtors that was valid on the Petition Date. The court in *Bloxsom* declared that "it makes no sense in this case to speak of [the] Trustee avoiding a lien" where the property was unencumbered as of the petition date because reformation had not been granted. *Id.* at 58; *see* Mem. Op., p. 5 (noting that "the real property remained unencumbered without reformation") [App. 323].

Similarly, in *Miller v. New Penn Fin., LLC (In re Miller)*, 2020 Bankr. LEXIS 1084 (Bankr. N.D. Ga. Apr. 21, 2020), the court recognized that the First Clause provided the debtor with the rights of a BFP to defend against post-petition efforts to create a lien. The court recognized that "*no avoidance was needed of liens that simply did not exist.*" *Id.* at *14 (emphasis added) (citing *Southern Bank & Trust Co.*

- 15 -

*v. Alexander (In re Alexander)*, 2014 Bankr. LEXIS 3048, *10 (E.D. Va. July 16, 2014), *aff'd*, 524 B.R. 82 (E.D. Va. 2014).

In *Alexander,* the creditor also did not have a lien on the petition date. It sought to create a lien through post-petition reformation. 2014 Bankr. LEXIS 3048, at *13 ("The reformation will result in the [Bank] having a valid and binding first, second, and third deed of trust lien on the Property."); *see also id.* at *26 ("to adopt the Bank's position that the Trustee must file a lien avoidance adversary proceeding would require the Court to adopt alternate facts since neither party has alleged that any lien in favor of the Bank exists on Bonita's interest in the Property.").[4]

The court's decision in *Bank of N.Y. v. Sheeley (In re Sheeley)*, 2013 Bankr. LEXIS 929 (Bankr. S.D. Ohio Mar. 4, 2013), *aff'd, Bank of N.Y. v. Sheeley*, 2014 U.S. Dist. LEXIS 42748 (S.D. Ohio, Mar. 25, 2014), is consistent with the foregoing. As the court declared in that case, "[t]he court agrees with the analysis in *Bloxsom* and *Rent-A-Center*. *At the time the Sheeleys filed their petition, the Residence Parcel*

---

[4] The Bankruptcy Court correctly noted that the *Miller* court acknowledged that the parties agreed that a security deed was valid between the parties without recording. Mem. Op., p. 6 (citing *Miller,* 2020 WL 1933922, at *2). However, the balance of that decision evidences that the court concluded that no lien existed. *See Miller,* 2020 Bankr. LEXIS 1084, at *14. The *Miller* court's reliance on, and citation to *Alexander* –where no lien existed, and the creditor sought to create a lien through reformation— establish as much. If the *Miller* court meant that a lien already existed as of the petition date, then *Miller* was wrongly decided, and the court's reliance upon *Alexander* was misplaced. *See Alexander,* 2014 Bankr. LEXIS 3048, at *13 (discussed above).

*was unencumbered and there was no lien to avoid.*" *Id.* at \*29 (emphasis added).

Although in the absence of bankruptcy, the creditor would have been entitled under

Ohio law to reform its mortgage to create a lien, the debtor's BFP status under the

First Clause precluded the bank's post-petition efforts to do so. *Id.*[5] Accordingly, in

that opinion, the First Clause did not override or nullify the Second Clause. The First

Clause was used defensively to avoid the *creation* of a lien on the debtor's property.

An unpublished decision of the United States Court of Appeals for the Fifth

Circuit also is instructive in the interpretation of section 544(a). *See NCC Fin. L.L.C.*

*v. Investar Bank, N.A. (In re W Res., L.L.C.)*, 2022 U.S. App. LEXIS 10140, \*6 (5th

Cir. Apr. 14, 2022). In *West Resources*, the Court applied section 544(a) where the

---

[5] The Bankruptcy Court relied upon a statement from an earlier 2012 opinion in the Sheeley bankruptcy case. Mem. Op, p. 5 (citing to *Bank of N.Y. v. Sheeley (In re Sheeley)*, [2012 Bankr. LEXIS 1374,] 2012 WL 8969064, at \*5 (Bankr. S.D. Ohio Apr. 2, 2012), for the proposition that "a mortgage is enforceable between the mortgagor and the mortgagee even if the mortgage contains a defect or is improperly executed or recorded"). In the same paragraph of the 2012 decision upon which the Bankruptcy Court relied, the court more specifically declared only that "*[t]he Bank likely could introduce sufficient facts at trial to establish that the Mortgage is enforceable* against the Sheeleys' fee simple interests under state law.") *Sheeley,* 2012 Bankr. LEXIS 1374, \*14 (emphasis added). Additionally, although the Bankruptcy Court referred to the cases discussed in the Memorandum Opinion as "GE's authorities" (Mem. Op., p. 4), Appellants did not rely upon the 2012 *Sheeley* opinion. Instead, Appellants relied upon the subsequent 2013 *Sheeley* opinion. *See* 10/30/24 Hrg. Tr. 30:10-13 [App. 298]. The Bankruptcy Court did not address the 2013 *Sheeley* opinion (discussed in the text above) in which the court plainly declared that, "[a]t the time the Sheeleys filed their petition, the Residence Parcel was unencumbered and there was no lien to avoid." *Sheeley,* 2013 Bankr. LEXIS 929, at \*29.

creditor had *no lien* on the debtor's property as of the petition date. *See id.* (The "*Mortgage was defective at the inception of bankruptcy* because it reflected only an obligation to pay by W Resources, yet *the debtor owed it nothing*. Louisiana law renders unenforceable such a mortgage that does not support an underlying obligation.") (emphasis added). The Court applied the 544(a) powers to hold that the creditor could not "clean up" its documents to create a lien on the debtor's property. *Id.* at \*7 & \*8 ("NCC Financial also did not cite any case, and we are aware of none, that remotely resembles this one, in which a secured creditor was allowed to clean up its documentation and perfect an otherwise unenforceable claim *post-bankruptcy*.") (emphasis added) and ("The bankruptcy court did not explicitly mention the strong-arm clause here, but its relevance is unmistakable.").

The common thread running through the foregoing cases is that a debtor's BFP status is a defense that precludes a creditor's post-petition action to create a lien against the debtor's property where such lien did not exist on the petition date. The First Clause, however, does not apply to avoid a lien on a debtor's property where such lien existed on the petition date. The First Clause has application independent of the Second Clause, but it does not override or swallow the Second Clause. As applied to this case, the First Clause does not permit the Debtors to avoid or nullify the Liens because the Liens *did encumber* the Debtors' property as of the Petition Date under Texas law. *See Santoyo,* 540 B.R. at 290 ("A constitutional

- 18 -

mechanic's lien is self-executing as between the owner and the original contractor regardless of notice or statutory requisites.").

**D.    The Debtors' Attempt to Reclassify the Secured Claims under Section 502(b)(1) of the Bankruptcy Code Also Fails as a Matter of Law.**

The Debtors sought to reclassify the *Secured* Claims as *unsecured* claims under section 502(b)(1) of the Bankruptcy Code. The Bankruptcy Court declined to address section 502(b)(1) because it accepted the Debtors' arguments regarding section 544(a)(3). *See* Mem. Op., p. 2 ("Talen seeks to render the secured claims as general unsecured claims pursuant to §§ 502(b)(l) and 544(a)(3). Because Talen prevails on its § 544 theory, the Court need not analyze its alternative avenue seeking the same relief.") [App. 320].[6]

However, the Debtors did not assert section 502(b)(1) as an alternative avenue to disallow the Secured Claims. The Debtors asserted section 502(b)(1) as the avenue to reclassify the Secured Claims based upon their section 544(a)(3)

---

[6] Appellants acknowledge that, "'[i]It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below,'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). "[W]hen to deviate from this rule" is "a matter 'left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases,'" *Id.* (quoting *Singleton*, 428 U.S. at 121). Here, judicial economy, avoiding serial appeals and the legal nature of the issue (and its clear resolution) weigh in favor of the Court's exercise of its discretion to decide an issue that was raised below (even though the Bankruptcy Court did not decide it). *See C&B Sales & Serv. Inc. v. McDonald*, 177 F.3d 384, 389 (5th Cir. 1999) ("We render rather than remand for reasons of judicial economy").

argument. *See* 10/30/24 Hrg. Tr. at 9:23-24 ("The key inquiry is enforceability under Section 502(b)(1)") [App. 277]; *see also* Objection, ¶ 6 [App. 198]; Reply, ¶ 2 [App. 257-58].

Disallowance of claims is governed by section 502. Section 502(b) provides that the Court "shall allow" a claim unless one of the bases set forth in § 502(b)(1) through (b)(9) applies. 11 U.S.C. § 502(b). As the Bankruptcy Court recognized in *In re Today's Destiny, Inc.*, 2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. Nov. 26, 2008) (Isgur, J.), "the statute speaks in absolute terms: the court 'shall allow' a claim 'except to the extent that' the claim falls into one or more of the enumerated categories of claims." *Id.* at *9-10 n.6.

Section 502(b)(1) provides that, "if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable *against the debtor and property of the debtor*, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b) (emphasis added). Section 502(b)(1) is written in the conjunctive and requires unenforceability against both the debtor *and* its property. *See Stuart v. City of Scottsdale (In re Stuart)*, 2021 Bankr. LEXIS 981, *6 (9th Cir BAP Apr. 12, 2021). The Debtors concede that Appellants' claims are

- 20 -

enforceable against the Debtors, they just seek to reclassify them as *unsecured* claims. *See* 10/30/24 Hrg. Tr. at 11:7-12:8 [App. 279-80].  For that reason alone, section 502(b)(1) does not provide a basis to disallow the Secured Claims.

In addition, the Secured Claims are enforceable against the Debtors' property. "Property of the debtor" is prepetition property. *See Begier v. IRS,* 496 U.S. 53, 58 (1990). As discussed above, the Secured Claims (and the Liens) *were enforceable* as of the Petition Date *against the Debtor and its property*. *See Santoyo,* 540 B.R. at 290.

Section 502(b)(1) also is not a means to avoid a lien where avoidance of the lien is time-barred. *See Lee v. Bank One, N.A. (In re Lee)*, 249 B.R. 864, 866 (Bankr. N.D. Ohio 2000) ("In no respect" is § 502(b) a lien avoidance statute) (citing House Rpt. 95-595, 95th Cong. 1st Sess. 352 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 62 (1978); *see also* 10/30/24 Hrg. Tr. at 10:25-11:2 [App. 278-79]; at 12:9-11 [App. 280]. Accordingly, section 502(b)(1) provides no basis to disallow the Secure Claims.[7]

### E.     The Bankruptcy Court's Policy Concerns Miss the Mark.

In support of its disallowance and reclassification of the Secured Claims, the Bankruptcy Court raised a concern about creating "perverse incentives." Mem. Op.,

---

[7] Notably, the Debtors disclaim reliance upon section 502(d) of the Bankruptcy Code, which provides for disallowance of claims "of any entity . . . that is a transferee of a transfer *avoidable* under section . . . 544 . . . of this title." 11 U.S.C. § 502(d)

p. 7. Those concerns are based on a "strawman," namely the argument that the section 546(a) statute of limitations would apply to a debtor's BFP status under the First Clause. *Id.* ("If the statute of limitations applied to **status**, it would be valueless to the Trustee.") (emphasis in original). Appellants are not (and never were) arguing that the section 546(a) statute of limitations applies to the Debtors' BFP status under the First Clause. Instead, Appellants argue that the First Clause cannot be used to circumvent that statute of limitations on avoidance actions under the Second Clause. There is no statute of limitations on the use of BFP status to defend against a

---

(emphasis added). The Liens are not "avoidable" under section 544 because (as discussed above) any such action is time-barred.

In *GMAC Mortg. LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.)*, 2008 Bankr. LEXIS 4353, *15 (Bankr. S.D. Tex. Oct. 2, 2008) (Isgur, J.), the Bankruptcy Court recognized that "[t]he Fifth Circuit holds that § 502(d) operates to enforce orders and judgments, not to disallow claims based on *theoretically* avoidable transfers when no liability has been established and when no liability can be established." (emphasis added); *see Campbell v. U.S. (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989) ("The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders."). Here, the Bankruptcy Court effective disallowed the *Secured* Claims and reclassified them as unsecured claims notwithstanding that the Liens were unavoidable, and the Secured Claims were not subject to disallowance under section 502(d). The Bankruptcy Court's failure to address section 502(d) is important because it is "exclusive as to the kinds of situations it describes." *In re Odom Antennas, Inc.*, 340 F.3d 705, 708 (8th Cir. 2003) (citing 4 Lawrence P. King, et al., COLLIER ON BANKRUPTCY ¶ 502.05[3] (15th ed. rev. 2003). In the Fifth Circuit, a time-barred avoidance action cannot be used defensively to disallow a claim. *See In re West*, 474 B.R. at 202-03.

creditor's post-petition attempt to *create* a lien on a debtor's property *where no such lien existed* on the petition date.

The irony here is that the Bankruptcy Court's Memorandum Opinion and Order create a perverse incentive for a debtor (like the Debtors) to completely ignore the section 546(a) statute of limitations on avoidance actions and to spring out of the shadows a year (like the Debtors) or more later wielding the First Clause to "set aside" or avoid a lien that existed on the petition date and is no longer avoidable under the Second Clause and section 546(a).  Fortunately, the applicable case law does not support that result.

## VI.   CONCLUSION

For the foregoing reason, Appellants respectfully request that the Court (i) reverse the Order and instruct the Bankruptcy Court (on remand) to enter judgment in Appellants' favor allowing the Secured Claims in the aggregate amount of $758,756.42 and (ii) grant such further relief to Appellants as is appropriate.

Dated: June 6, 2025
　　　　Houston, Texas

Respectfully submitted,

**REED SMITH LLP**

*/s/ Kurt F. Gwynne*
Paul D. Moak (Texas Bar No. 00794316)
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
E-mail: pmoak@reedsmith.com

*Counsel for Appellants,*
*GE Steam Power Inc., and*
*General Electric International, Inc.*

- 24 -

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 6,048 words.

The undersigned further certifies that the foregoing brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirement of Fed. R. Bankr. P. 8015(a)(5)(A) and (a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted,

**REED SMITH LLP**

*Paul D. Moak*
Paul D. Moak (Texas Bar No. 00794316)
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
E-mail: pmoak@reedsmith.com

*Counsel for Appellants,*
*GE Steam Power Inc., and*
*General Electric International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, a true and correct copy of the foregoing

*Brief of Appellants, GE Steam Power Inc. and General Electric International, Inc.*

was served electronically through the Court's ECF transmission facilities on all

parties registered to receive ECF notice.

*/s/ Paul D. Moak*
Paul D. Moak (Texas Bar No. 00794316)
REED SMITH LLP

- 26 -